## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT WISCONSIN

| | |
|---|---|
| PAMELA HARRIS, on Behalf of Herself and All Others Similarly Situated, | Civil Action No. _____ |
|     Plaintiff, | |
|     vs. | **COMPLAINT** |
| | **CLASS ACTION** |
| ASSOCIATED BANC-CORP., a Wisconsin Corporation, | |
|     Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Pamela Harris, ("Plaintiff"), individually and on behalf of the Class described below, by her attorneys, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.       This is a civil action seeking monetary damages, restitution and injunctive relief from Defendant Associated Banc-Corp. ("Associated Bank" or the "Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.       In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Associated Bank.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated

that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.   Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.     In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks brought in $37.1 billion in overdraft charges alone*.  Serving over one million customers through nearly 300 banking locations in approximately 160 communities in Wisconsin, Minnesota and Illinois, Associated Bank benefits greatly from these staggering charges.

4.     Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.     Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been

purchased.

6.     The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be incurred, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.     Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Associated Bank, routinely processes such transactions and then charges its customers an overdraft fee of $37 – even when the transaction is only for a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Associated Bank.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Associated Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.     In many instances, these overdraft fees cost Associated Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction because the customers have deposited funds that Associated Bank has not credited to customers' accounts.

9.     Thus, it is through manipulation and alteration of customers' transaction records that Associated Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.     The Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Associated Bank.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Associated Bank is subject to personal jurisdiction here and regularly conducts business in the Western District of Wisconsin, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

12.     Plaintiff Pamela Harris is a citizen of the State of Wisconsin.

13.     Associated Bank is a commercial bank, which maintains its principal place of business in Green Bay, Wisconsin.  Associated Bank regularly and systematically conducts substantial business throughout Wisconsin, including within this district.  Among other things, Associated Bank is engaged in the business of providing retail banking services to more than one million customers, including Plaintiff and members of the putative Class, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts. Associated Bank serves over one million customers through nearly 300 banking locations in approximately 160 communities in Wisconsin, Minnesota and Illinois.

14.     Associated Bank, a national bank, is subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

15.     Plaintiff brings this action on behalf of herself and all other similarly situated

4

pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

16.     The proposed class is defined as:

> All Associated Bank customers having accounts at branches in the states of Wisconsin, Minnesota and Illinois, who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Associated Bank's practice of re-sequencing debit card transactions from highest to lowest (the "Class").

17.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

18.     Excluded from the Class are Associated Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Associated Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members

19.     The members of the Class are so numerous that joinder is impractical.  The Class consist of thousands of members, the identity if whom is within the knowledge of and can be ascertained only by resort to Associated Bank's records.

20.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged overdraft fees by Associated Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest and deducting all debits before applying any credits.  The representative Plaintiff, like all Class members, has been damaged by Associated Bank's misconduct in that they incurred and/or will continue to incur unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Associated Bank's misconduct is common to all Class members, and represents a common threat of unfair and unconscionable conduct resulting in injury to all members of the

Class.

21.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

22.     Among the questions of law and fact common to the Class are whether Associated Bank:

       a.     Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

       b.     Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

       c.     Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

       d.     Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

       e.     Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

       f.     Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

       g.     Fails to provide customers with accurate balance information;

       h.     Delays posting of transactions by customers using debit cards to that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

       i.     Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

       j.     Breaches its covenant of good faith and fair dealing with Plaintiff and the

other members of the Class through its overdraft policies and practices;

       k.    Converts monies belonging to Plaintiffs and the other members of the Class through its overdraft policies and practices;

       l.    Requires its customers to enter into standardized account agreements, which include unconscionable provisions;

       m.    Is unjustly enriched through its overdraft policies and practices;

       n.    Violates the consumer protection acts of certain states through its overdraft policies and practices; and

       o.    Continues to commit wrongdoing through its overdraft policies and practices.

23.    Other questions of law and fact common to the Class include:

       a.    The proper method or methods by which to measure damages; and

       b.    The injunctive relief to which the Class are entitled.

24.    Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Associated Bank's account agreements and other related documents.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

25.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

26.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is

small relative to the complexity of the litigation, and due to the financial resources of Associated Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Associated Bank's misconduct will proceed without remedy.

27.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contract, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.     Associated Bank

28.     According to its website, Associated Bank is the second largest bank in Wisconsin with a growing presence in the Minneapolis and Chicago Markets.  The Bank serves more than one million customers through nearly 300 banking locations in approximately 160 communities in Wisconsin, Minnesota and Illinois.

29.     Associated Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Associated Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at ATMs.  Whether the card is used to execute POS transactions or to withdraw cash from ATM

machines, the transaction is processed electronically.  As a result, Associated Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

30.   Associated Bank employees sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

31.   As a result of Associated Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at time when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Associated Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Further, if a customer made a deposit of $100 on the same day, the Bank would only credit the account with the deposit after deducting all the debits, thus, still imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last – consistent with the actual order of transactions – only one overdraft fee would be assessed.  Moreover, if the $100 deposit was credited before the debits were deducted, no overdraft fees would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

### B.   Associated Bank's Relevant Customer Documents Regarding Overdrafts

32.   Plaintiff and all members of the Class maintain or maintained a checking account with Associated Bank.  The terms of Associated Bank's checking accounts are contained in

standardized account holder agreements (the "Deposit Agreement"), presented to its customers on a "take it or leave it" basis, drafted and imposed by Associated Bank, which was the party of vastly superior bargaining strength, and this constitute agreements of adhesion. Plaintiff is not in possession of the Deposit Agreement and upon information and belief said agreement is in the possession of the Bank.

33.     Associated Bank also publishes other documents that are available to customers at its branches that list a schedule of fees and other important information about the customers' accounts. Plaintiff is not in possession of these documents and upon information and belief said documents are in the possession of the Bank.

34.     The Deposit Agreement and related documents fail to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

**C.      Associated Bank's Re-Ordering of Checking Account Transactions**

35.     In an effort to maximize overdraft revenue, Associated Bank manipulates and reorders debits from highest to lowest and does not apply credits to accounts until all debits are deducted during given periods of time. Associated Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge. This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

36.     In addition, Associated Bank misleads its customers regarding its reordering practices, as the Bank does not state unequivocally in its contract that it will reorder debits from highest to lowest and that it will deduct all debits before applying credits.

37.     Transactions involving debit cards used by Associated Bank customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed

electronically.  As a result, Associated Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transaction.

38.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Associated Bank's posting system, it fails to post charges and credits in the order in which they are incurred or received.  Associated Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order and debits are deducted before credits are applied, regardless of when the credits were deposited, for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

39.     Instead of processing such transactions in chronological order and applying credits before deducting debits, Associated Bank processes transactions starting with the largest debit and ending with the smallest debit, as well as deducting all debits before applying credits, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

40.     Associated Bank refrains from immediately posting charges to a customer's account as it receives them – sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Associated Bank is able to amass a number of charges on the account.  Subsequently, Associated Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Associated Bank posts them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged.  Further, Associated Bank posts account credits after all debits have been deducted – not in the order in which they were received.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances

in their accounts.

41.    Associated Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, and deducting all debits before applying credits is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

42.    Associated Bank enforces an unconscionable policy whereby charges incurred are posted to customer' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Associated Bank's policy of deducting all debits before applying credits in a non-chronological order is also unconscionable.  Associated Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide Associated Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

43.    As a result, Plaintiff and members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.    Associated Bank's Cloaking of Accurate Balance Information**

44.    Associated Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

45.    Associated Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, Associated Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual

knowledge of outstanding debits and transactions.

46.     Even when Associated Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer' account, it encourages the customer to incur more overdraft charges by approving – rather than prudently declining – subsequent debit card purchases and other electronic transmissions.

47.     Associated Bank also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Associated Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

**E.      Associated Bank's Failure to Notify Customer of Overdrafts or Advise Customers of Their Rights to Opt Out**

48.     At the time its debit cards are used in POS transactions or at ATMs, Associated Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  Associated Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a predetermined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Associated Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not to do because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

49.     Notwithstanding its technological capabilities and actual knowledge, Associated Bank fails to provide notice to Plaintiff and the Class that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Associated Bank's customers are not

notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers incur monetary damages in the form of overdraft fees.

50.     Associated Bank fails to make Plaintiff and Class members aware that they can opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being incurred.

**F.      Associated Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

51.     By engaging in the conduct described herein, Associated Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit "A".  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

52.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 18, 2008).

53.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."   70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

54.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale of ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit "B".

55.     Associated Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

56.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion: Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit "C", finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds

that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee." The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

57.    A chart from the research company Moebs Services shows that, in every years since 1992, banks have gained increased revenues from overdraft fees:



**Bank and Credit Union Revenue from Overdraft Programs and Insufficient-Funds Fees, In $Billions**

G.    **Associated Bank's Unconscionable Provisions and Policies**

58.    Associated Bank's overdraft policies and practices are unconscionable in the following respects, among others:

    a.    The Bank does not disclose or reasonably disclose to customers that they

16

have the option to "opt out" of the Bank's overdraft scheme;

      b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

      c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

      d.     The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety.

      e.     The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document which is not signed by the depositer; and

      f.     The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits form high to low and that the Bank always deducts all debits before applying any credits, even though Associated Bank *always* reorders transactions in these ways for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

59.     Plaintiff is not in possession of the Deposit Agreement, and as such, does not know whether the Agreement contains an arbitration clause and/or class action waiver.  In the event that the Agreement does contain an arbitration provision and/or class action waiver, such provisions are unenforceable, as the Agreement is a contract of adhesion, as explained herein.

H.   **Associated Bank's Overdraft Practices Harmed Plaintiff**

60.   Plaintiff Pamela Harris is a former checking account customer of Associated Bank.

61.   In connection with her account, the Bank issued a debit card to Ms. Harris. A debit card allows customers to access their checking account funds by using the card to execute a transaction. The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

62.    Associated Bank charged Ms. Harris multiple overdraft fees.  For example, Ms. Harris was charged eight overdraft fees on November 10, 2009, in the amount of $35.00 each, for a total of $280.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Associated Bank Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 11/9/2009 | | | 602.81 |
| **Date Posted** | **Debit Description** | | | |
| 11/9/2009 | FSB-HILLSBORO LOAN PMT | 500 | | 102.81 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI 000017830430 | 89.46 | | 13.35 |
| 11/9/2009 | DDA PUR WI DEPT OF 608-2661466 WI 931000601835 | 86 | | -72.65 |
| 11/9/2009 | DDA PUR MARY'S QUI 726 N MAIN ST VIROQUA WI 000000949920 | 74.24 | | -146.89 |
| 11/9/2009 | DDA PUR CASEYS #00 110 S 5TH STREET ADAIR IA 000015112794 | 56.85 | | -203.74 |
| 11/9/2009 | ATM W/D ICE HOUSE 10900 EMMET ST OMAHA NE 000000254125 | 43 | | -246.74 |
| 11/9/2009 | DDA PUR CASEYS #00 1625 E BROAD ST STORY CITY IA 000023141788 | 37. 73 | | -284.47 |
| 11/9/2009 | DDA PUR UWEX COOPE 877-9477827 WI 931000765010 | 30.48 | | -314.95 |
| 11/9/2009 | DDA PUR WAL WAL-MA 0971 WAL-SAMS VIROQUA WI 000052269592 | 25.24 | | -340.19 |
| 11/9/2009 | DDA PUR 0129 YANKE OMAHA NE 931103003354 | 25.12 | | -365.31 |
| 11/9/2009 | ATM W/D THE PARK B 1504 SUPERIOR AVE TOMAH WI 000093139916 | 20 | | -385.31 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI 000018980927 | 15.78 | | -401.09 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000370871 | 14.67 | | -415.76 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000227003 | 10.99 | | -426.75 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000315517 | 8.21 | | -434.96 |
| 11/9/2009 | DDA PUR WAL-MART S 0971 WAL-SAMS VIROQUA WI 000000667072 | 7.26 | | -442.22 |
| 11/9/2009 | DDA PUR EYOTA MARK 501 GLEN STREET EYOTA MN 000000610975 | 6.88 | | -449.1 |
| 11/9/2009 | DDA PUR HOT TOPIC OMAHA NE 931102962686 | 5.34 | | -454.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -489.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -524.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -559.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -594.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -629.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -664.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -699.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -734.77 |
| | | **Total Fees** | **$280** | |

63.    If Associated Bank had not manipulated and reordered Ms. Harris' transactions from highest to lowest, she would not have incurred eight overdraft fees.

64.    For instance, if Associated Bank had posted the transactions from lowest to highest, Ms. Harris would have incurred only one overdraft fee instead of eight:

### Balance Sheet if Debits Were Processed from Lowest to Highest and Credits Applied Before Debits Deducted

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 11/9/2009** | | | $602.81 |
| **Date Posted** | **Debit Description** | | | |
| 11/9/2009 | DDA PUR HOT TOPIC OMAHA NE 931102962686 | 5.34 | | 597.47 |
| 11/9/2009 | DDA PUR EYOTA MARK 501 GLEN STREET EYOTA MN 000000610975 | 6.88 | | 590.59 |
| 11/9/2009 | DDA PUR WAL-MART S 0971 WAL-SAMS VIROQUA WI 000000667072 | 7.26 | | 583.33 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000315517 | 8.21 | | 575.12 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000227003 | 10.99 | | 564.13 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI 000000370871 | 14.67 | | 549.46 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI 000018980927 | 15. 78 | | 533.68 |
| 11/9/2009 | ATM W/D THE PARK B 1504 SUPERIOR AVE TOMAH WI 000093139916 | 20 | | 513.68 |
| 11/9/2009 | DDA PUR 0129 YANKE OMAHA NE 931103003354 | 25.12 | | 488.56 |
| 11/9/2009 | DDA PUR WAL WAL-MA 0971 WAL-SAMS VIROQUA WI 000052269592 | 25.24 | | 463.32 |
| 11/9/2009 | DDA PUR UWEX COOPE 877-9477827 WI 931000765010 | 30.48 | | 432.84 |
| 11/9/2009 | DDA PUR CASEYS #00 1625 E BROAD ST STORY CITY IA 000023141788 | 37. 73 | | 395.11 |
| 11/9/2009 | ATM W/D ICE HOUSE 10900 EMMET ST OMAHA NE 000000254125 | 43 | | 352.11 |
| 11/9/2009 | DDA PUR CASEYS #00 110 S 5TH STREET ADAIR IA 000015112794 | 56.85 | | 295.26 |
| 11/9/2009 | DDA PUR MARY'S QUI 726 N MAIN ST VIROQUA WI 000000949920 | 74.24 | | 221.02 |
| 11/9/2009 | DDA PUR WI DEPT OF 608-2661466 WI 931000601835 | 86 | | 135.02 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI 000017830430 | 89.46 | | 45.56 |
| 11/9/2009 | FSB-HILLSBORO LOAN PMT | 500 | | -454.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35 | -489.94 |
| | | **Total Fees** | **$35** | |

65.    Associated Bank failed to notify Plaintiff that she could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Associated Bank never notified Plaintiff, at the time she executed the purported insufficient funds transactions described above, that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions.  Furthermore, Associated Bank paid, rather than returned, all of the debit card charges described above, even though Plaintiff's accounts purportedly lacked sufficient funds to cover the transactions.

66.     Based on information and belief, the overdraft charges incurred by Plaintiff are representative of millions of dollars of overdraft fees that Associated Bank wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transactions.

## I.     The Damages Sustained by Plaintiff and the Class

67.     As shown by the example of Ms. Harris, Associated Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."  *Id.*

68.     According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

69.     Thus, as a consequence of Associated Bank's overdraft policies and practices, Plaintiff and the Class have been wrongfully forced to pay overdraft fees.  Associated Bank has improperly deprived Plaintiff and the Class of significant funds, causing ascertainable monetary

losses and damages.

70.     As a consequence of Associated Bank's improper overdraft fees, Associated Bank has wrongfully deprived Plaintiff and the Class of funds to which it had no legitimate claim.

71.     Plaintiff and the Class had sufficient funds to cover at least some of the transactions for which Plaintiff and the Class were charged overdraft fees.  Plaintiff and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Associated Bank could impose these wrongful charges.  In many instances, Associated Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

72.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[1]
#### (On Behalf of the Class)

73.     Plaintiff repeats paragraphs 1 through 72 above.

74.     Plaintiff and Associated Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Associated Bank's Deposit Agreement and related documentation.

75.     Under the laws of the states where Associated Bank does business, including Wisconsin, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of

---

[1] Wisconsin and certain other states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

76.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

77.     Since at least 2004, Associated Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

78.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

79.     Plaintiffs and members of the Class have sustained damages as a result of Associated Bank's breach of the covenant of good faith and fair dealing.

<u>**SECOND CLAIM FOR RELIF**</u>
<u>**Unconscionability**</u>
**(On Behalf of the Class)**

80.     Plaintiff repeats paragraphs 1 through 72 above.

81.     Associated Bank's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they

23

have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low and that the Bank always deducts all debits before applying credits, even though Associated Bank *always* reorders transactions in these ways for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

82.     Considering the great business acumen and experience of Associated Bank in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns

83.     The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $37 charge on an overdraft of less than $37) is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

84.     Plaintiffs and members of the Class have sustained damages as a result of Associated Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
#### Conversion
#### (On Behalf of the Class)

85.     Plaintiff repeats paragraphs 1 through 72 above.

86.     Associated Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

87.     Associated Bank has wrongfully collected overdraft fees from Plaintiff and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

88.     Associated Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the ownership or possessory rights of Plaintiff and the members of the Class, without legal justification.

89.     Associated Bank continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class.

90.     Associated Bank intends to permanently deprive Plaintiff and the members of the Class of these funds.

91.     These funds are properly owned by Plaintiff and the members of the Class, not Associated Bank, which now claims that it is entitled to their ownership and possession, contrary

to the rights of Plaintiffs and the members of the Class to own or possess said funds.

92.     Plaintiff and the members of the Class are entitled to the immediate possession of the funds.

93.     Associated Bank has wrongfully converted these specific and readily identifiable funds.

94.     Associated Bank's wrongful conduct is continuing.

95.     As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

96.     By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Associated Bank all damages and costs permitted by law, including all amounts that Associated Bank has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Class)**

97.     Plaintiff repeats paragraph 1 through 72 above.

98.     Plaintiff, on behalf of herself and the Class, assert a common law claim for unjust enrichment.  This claim is in the alternative to the breach of contract claim, above.

99.     By means of Associated Bank's wrongful conduct alleged herein, Associated Bank knowingly provides banking services to Plaintiff and members of the Class that are unfair, unconscionable, and oppressive.

100.    Associated Bank knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class.  In doing so, Associated Bank acted with conscious disregard for the rights of Plaintiff and members of the Class.

101.    As a result of Associated Bank's wrongful conduct as alleged herein, Associated Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members

of the Class.

102.    Associated Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

103.    Under the common law doctrine of unjust enrichment, it is inequitable for Associated Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner.   Associated Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

104.    The financial benefits derived by Associated Bank rightfully belong to Plaintiff and members of the Class.  Associated Bank should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Associated Bank traceable to Plaintiff and the members of the Class.

105.    Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class she seeks to represent, demands a jury trial on all claims so triable, and demands judgment as follows:

1.    Injunctive relief enjoining Associated Bank from charging overdraft fees under its current policies and from engaging in the wrongful, unfair, and unconscionable practices alleged herein.

2.    Restitution of all overdraft fees paid to Associated Bank by Plaintiff and the Class, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.    Disgorgement of all ill-gotten gains derived by Associated Bank from its

misconduct;

4.      Actual damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper


Dated:  April 2, 2010


s/Matthew W. O'Neill
Robert H. Friebert, State Bar No. 1009206
Matthew W. O'Neill, State Bar No. 1019269
**FRIEBERT, FINERTY & ST. JOHN, S.C.**
330 E. Kilbourn Ave. – Suite 1250
Milwaukee, WI  53202
Telephone:  (414) 271-0130
Fax:  (414) 272-8191
rhf@ffsj.com
mwo@ffsj.com

*Counsel for Plaintiff and the Proposed Class*

OF COUNSEL:

Jeffrey M. Ostrow (Florida Bar No. 121452)
David L. Ferguson (Florida Bar No. 981737)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
ostrow@kolawyers.com
ferguson@kolawyers.com